J. D. HAMILTON and others *v.* MOUND CITY MUTUAL LIFE
INSURANCE COMPANY.

April Term, 1876.

TRUST-DEED — CONSTRUCTION — MORTGAGE. — Under a deed conveying land
to a trustee in trust for the joint use of husband and wife during their
lives, and for the separate use for life of the survivor, and after the death
of both the "remainder" to be equally divided between the children of
the husband and wife, and with powers in the trustee, the husband and
wife or the survivor concurring, "to sell, exchange, or otherwise dispose
of" the property, the means to be used, as far as they may go, for the sup-
port of the husband, wife, and children, and at their death, "if any thing
is then left," to be divided between the children, a mortgage by the
trustee, with the concurrence of the husband and wife, foreclosed by decree
of sale against them, and acquiesced in by them, was held good upon a bill
by the children, alleging that the debt secured by the mortgage was the
debt of a third person, and not contracted for the support of the husband
and wife.

*Thomas M. Steger*, for complainants.
*R. McP. Smith*, for defendant.

THE CHANCELLOR : — On September 29, 1857, Oscar
Hamilton, by deed of that date, "for the consideration of
love and affection" for his brother Mortimer Hamilton
and his wife Emmeline, and their children (naming them),
conveyed to John Thompson his interest in his brother J.
D. Hamilton's estate, in trust "for the joint and separate
use of Mortimer Hamilton and Emmeline Hamilton, his
wife, for and during the term of their joint lives, and then
to the survivor for the remainder of his or her life, free
from the present debts and liabilities, or any future debts
and liabilities, of the said Mortimer Hamilton; and after
the death of both of them, then the remainder of said
estate, of whatever kind, to be equally divided between all
the children now living of the said Emmeline and Mortimer
Hamilton, or that may be hereafter born to them." The
deed then proceeds thus : "I further direct and empower
the said trustee to sell, exchange, or otherwise dispose of
any or all of said property as he may think best for the pur-

poses of this gift, provided the said Mortimer and Emmeline concur in such disposition or change, if they both be living ; if but one, the consent of the surviving one." The deed concludes with the following recital: " I make this gift of," etc.,    *    *    *    " for the support, as far as the same may go, of my brother Mortimer Hamilton and his wife and children, with a full knowledge of his pecuniary embarrassment ; and it is my right, as it is my intention, to help him and his family to this extent, and to place these means in such a situation that they shall be thus used, and not otherwise, during the lives of my brother and his wife ; and if any thing is then left, to be divided between their children."

The deed provided for a transfer of the trusteeship by Thompson to Mortimer Hamilton, with all the powers of the original trustee ; and this was done by a proper instrument, on July 17, 1872.   On the same day, Mortimer Hamilton and Emmeline, his wife, and Mortimer Hamilton, trustee, joined in conveying the land in controversy to T. C. Caskins, as trustee, in trust to secure a note, of the date of June 5, 1872, executed by Mortimer Hamilton and Emmeline, his wife, and T. H. Hamilton, and by Mortimer Hamilton as trustee, payable twelve months after date to the trustee named in the deed of July 17, 1872, for $1,314.58, with interest from date at the rate of ten per cent per annum.   The debt thus secured was due, it seems, to the defendant, the Mound City Mutual Life Insurance Company, and that company filed a bill in this court against the said Mortimer Hamilton and Emmeline, his wife, and the trustee, for a foreclosure of the trust deed.   Such proceedings were had in that cause that a decree of foreclosure was rendered, and the master ordered to sell the land in controversy in satisfaction of the debt.

The present bill was filed on November 6, 1875, by complainants, describing themselves as the children of Mortimer and Emmeline Hamilton, to enjoin the sale of said land, alleging that the debt secured by the said deed of

trust was not the debt of Mortimer Hamilton as trustee, or otherwise, but the debt of Thomas H. Hamilton, and was not contracted for the support of said Mortimer and Emmeline Hamilton, or of their family, and that the deed was therefore void, and a cloud upon complainants' title, who were no parties to the bill of foreclosure, and have an interest in the property under the terms of the deed of Oscar Hamilton, in trust as aforesaid.

The defendant has demurred, assigning as causes of demurrer, —

1. That the bill shows on its face that Mortimer Hamilton, as trustee, had the power to make the deed, with the consent of his wife, which was given ; and that a decree was rendered in the foreclosure suit, which is conclusive that the deed was executed within the power.

2. That the bill does not show that the debt of Thomas H. Hamilton secured by the deed was not contracted, and the deed made, within the scope of the Oscar Hamilton trust.

The deed of trust to Caskins, of July 17, 1872, was executed by Mortimer Hamilton as trustee, with the concurrence of Emmeline Hamilton, his wife, evidenced by her joining therein, and is certainly a disposition of so much of the trust property in strict conformity with the terms of the deed, — in form, at least.  Neither Hamilton nor his wife, the principal beneficiaries under the Oscar Hamilton gift, is now questioning the validity of the act, even if either could do so after the decree in the foreclosure suit.  As long as that decree stands, they are concluded by it.  And, at any rate, they are not making any contest.  The right of the defendant to the benefit of the security furnished by the deed and decree is not disputed by them.  Whatever interest they may have in the property is not in controversy.  The only question before the court is whether the complainants, as their children, are entitled to any, and what, relief.

If the children have either a present interest in the

come of the property, or a vested interest in remainder in the *corpus*, they have a right to come into this court to have that interest declared and protected. *Bowers* v. *Bowers*, 4 Heisk. 293. What, then, is their interest?

The grant is in trust " for the joint and separate use of Mortimer Hamilton and Emmeline, his wife," during their joint lives and the life of the survivor, and after the death of the survivor, " then the remainder of said estate " to be equally divided between the children. Standing alone, these words would give a life-estate to the parents, with remainder to the children. But the grant is followed by a power of disposition vested in the trustee, with the concurrence of the parents, or the survivor, and a clause declaring the intent of the grantor to be that "if any thing is left" at the death of the survivor, that shall go to the children. Thus, reduced to its simplest elements, the conveyance is in trust for the parents for life, with power to dispose of any part of the property through the trustee, the children taking whatever may be left. If the gift had been direct to Hamilton and wife, without the intervention of the trustee, it would have fallen directly within the well-settled principle that a gift or devise of property for life, with an unlimited power of disposition, carries the fee, and a remainder over of the residuum would be void. *David* v. *Bridgman*, 2 Yerg. 558 ; *Davidson* v. *Richardson*, 10 Yerg. 290 ; *Bean* v. *Myers*, 1 Coldw. 226 ; *Pooley* v. *Webb*, 3 Coldw. 599.

The intervention, however, of a trustee, clothed with discretionary powers to make the disposition " as he may think best for the purposes of the gift," brings the case within the exception to the general rule which was recognized in *Deadrick* v. *Armour*, 10 Humph. 588. The remainder over of any thing that might be left would be good, provided the power was not exercised. But if the power were exercised, inasmuch as the discretion of judging of the contingency is conferred upon the trustee, with the concurrence of the tenants for life, the remaindermen could not

complain unless the disposition was fraudulent. *Downing* v. *Johnson*, 5 Coldw. 229, 235 ; *McGavock* v. *Pugsley*, 1 Tenn. Ch. 418. Every presumption would be in favor of the proper exercise of the power as against an innocent third person. There is no charge of fraud or collusion, or averment of facts on which such a charge could rest, as against the defendant in this case. Nor are the necessary parties before the court to make such an issue, although this point is not raised by the demurrer. The bill is based exclusively upon the ground that the deed of July 17, 1872, is void because the debt thereby secured was not the debt of Mortimer Hamilton as trustee, or otherwise, but the debt of Thomas H. Hamilton, and was not contracted for the support of said Mortimer and Emmeline Hamilton, or of their family. This is clearly not sufficient to attack the *bonâ fides* of the transaction, nor does it implicate the defendant in any way. If the bill can be sustained, it must be on another ground altogether.

The learned counsel of the complainants does base the rights of his clients on another ground. His argument is that the power of disposition is limited to the purposes of the gift, and that these purposes are expressly for the support of Hamilton, his wife and children, the children having a present right of maintenance and a vested remainder in fee, under *Harris* v. *Alderson*, 4 Sneed, 250. If he is correct in his construction, then this case would fall within the class of cases cited and discussed in *McGavock* v. *Pugsley*, 1 Tenn. Ch. 410, where the power is dependent upon a contingency, or definitely qualified, and the remaindermen would have a right to avoid, so far as it affected their interests, any disposition of the property not within the limitation of the power. *Simmons* v. *Kincaid*, 5 Sneed, 450. If their interest was in the *corpus* of the property, then they could limit a disposition not contested by their parents to the lives of those parents. If they were entitled to any portion of the income, then to the extent of that portion.

The conveyance would still be good as to the parents, and only invalid to the extent of the interests of the complainants. What, then, is their interest, if any?

The granting part of the deed is, in substance, for the use of Hamilton and wife during their joint lives and the life of the survivor, with power of disposition by the trustee with their concurrence, or the concurrence of the survivor, the remainder, if any thing is left, to go to the children. So far, there is no provision for the support of the children. They take nothing but a possible residuum. Confining ourselves, then, to the granting part of the deed, the interest of the children is altogether in remainder.

But the deed does start out with the recital that the conveyance is " for the consideration of love and affection " for the grantor's brother, his wife and children; and it does, after the *habendum* and power of sale, contain the further recital that the grantor makes the gift of the property " for the support, as far as the same may go, of my brother Mortimer Hamilton, and his wife and children." It is at the close of this last recital that the grantor most clearly limits the right of the children to any thing which may be left at the death of their surviving parent. The recital of consideration and the declaration of intent do fairly imply that the grantor intended the children to be objects of his bounty. How far, and in what way, is by no means clear.

Ordinarily, we may consider the settled rule of construction to be, no matter what consideration is recited or what intention declared, that the estate vested, or interest conferred, depends upon the direct words of conveyance and the *habendum*. If these are plain and unambiguous, their legal import cannot be changed by general recitals. It is only in doubtful cases of construction that the recitals can be resorted to for light. The direct grant in this deed is clear and free from doubt. The parents are the objects of the grantor's bounty, clothed with the power of disposition,

in concurrence with the trustee, and the children come in for nothing except what may be left undisposed of, if any thing. The children are declared to be objects of his bounty, but subordinate to their parents. There is nothing, therefore, in the grant not in accord with the recitals, and no necessity of supplementing the grant by borrowing from the recitals. The grant is "for the support" of husband, wife, and children, but with a distinct preference given to the parents in the use during their lives, with a power of disposition, which clearly contemplates a use of the *corpus*, and that nothing may be left for the children in remainder.

Moreover, the recital of intention was not intended to change the granting part, nor the power of disposition; being added after both, and as matter of inducement. "I make this gift of property," he says, "for the support, as far as the same may go, of my brother, his wife and children, and it is my right, as it is my intention, to help him and his family to this extent, and to place these means in such a situation that they shall be thus used, and not otherwise, during the lives of my brother and his wife and if any thing is then left, to be divided between their children." Not only is there no change by this language of the previous part of the grant, but the words "as far as the same may go" manifestly refer to the power of disposition previously given, as do the words "if any thing is then left" to the "remainder" given in the direct grant. This clause was not intended to change, nor, in my opinion, does it add to, vary, or in any way affect, the previous part of the deed.

In this view, the authority conferred upon the trustee to dispose of any or all of the property given, with the concurrence of the parents, "as he may think best for the purposes of the gift," is for the benefit of the tenants for life. The "purposes of the gift" are the purposes of the previous grant, namely, "for the joint and separate use of Mortimer Hamilton and Emmeline, his wife, for and during the term of their joint lives, and then to the survivor for

the remainder of his or her life." These are the direct objects of the grantor's bounty, the children only taking a benefit through them, and coming in for any thing they may leave. The children have no direct interest in the income at all, and only a contingent interest in a possible remainder. *Moore* v. *Simmons*, 2 Head, 545.

I do not say, to use the language of the Supreme Court in *Downing* v. *Johnson*, 5 Coldw. 235, that, in a proper case made out, a court of chancery would not interfere to restrain a fraudulent and extravagant disposition of the property by the parents, in order to protect the contingent interests of the remaindermen; but no such case is made out in this record as will authorize such interposition.

The only doubt I have is whether the demurrer sufficiently covers the points thus ruled by its assignments. But, as it is a case which may well be disposed of on demurrer, I will allow the latter to be amended, and sustain it.